```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION
```

| | |
|---|---|
| JOHN SHERWOOD and TOMASZ STACHA, | |
| Plaintiffs, | |
| v. | Case No. 19 C 6605 |
| CITY OF CHICAGO, a Municipal Corporation; VILLAGE OF OAK PARK, a Municipal Corporation; HAK SA, INC., d/b/a @MOSPHERE; JEFFREY RODRIGUEZ; GIOVANNI RODRIGUEZ; ERIC ELKINS; and DWAYNE JONES, | Judge Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following Motions: (1) Defendants Jeffrey Rodriguez's and Giovanni Rodriguez's Motion to Dismiss Defendant Dwayne Jones' Counterclaim for Contribution (Dkt. No. 33); (2) Defendant Jeffrey Rodriguez's and Giovanni Rodriguez's Motion to Dismiss Defendant Eric Elkins' Counterclaim for Contribution (Dkt. No. 35); and (3) Defendant City of Chicago's Motion to Dismiss Counts I and VII of Plaintiffs' Complaint (Dkt. No. 40). For the reasons stated herein, the Court denies all three Motions.

## I. BACKGROUND

On September 29, 2018, Plaintiffs John Sherwood and Tomasz Stacha and Defendants Jeffrey Rodriguez ("Jeffrey"), Giovanni Rodriguez ("Giovanni"), Eric Elkins ("Elkins"), and Dwayne Jones ("Jones") were guests at @mosphere ("Atmosphere") bar on the northside of Chicago (Third Am. Compl., Dkt. No. 1-1, Counts V, XI ¶¶ 1-2.) Inside the bar, an argument occurred with intoxicated Defendants Jeffrey, Giovanni, Elkins, and Jones on one side and Plaintiffs on the other. (*Id.* at Count III ¶ 5, Count VI ¶ 9, Count XII ¶ 2.) The argument escalated to lime throwing, several of the Defendants falling into Plaintiffs' table, and one of the Defendants eventually punching Sherwood. (*Id.* at Counts IV, X ¶¶ 9, 10.) Shortly thereafter, Plaintiffs left the bar. (*Id.* at Count IV ¶ 12, Count X ¶ 11.) Elkins, Jeffrey, Giovanni, and Jones followed the Plaintiffs outside. (*Id.* at Counts IV, X ¶ 13.) A brawl ensued on the sidewalk in front of the bar, resulting in the Plaintiffs' injuries. (*Id.* at Counts V, XI ¶¶ 4-7.)

On September 17, 2019, Plaintiffs filed their Third Amended Complaint in the Circuit Court of Cook County, Illinois. (Third Am. Compl., Dkt. No. 1-1.) Two of the Third Amended Complaint's twelve counts contain 42 U.S.C. § 1983 claims against the City of Chicago ("City"). (*Id.* at Counts I, VII.) Plaintiffs also lodged battery claims against Elkins and Jones and negligence claims

against Jeffrey, Giovanni, and Atmosphere's owner, Hak Sa, Inc. (*Id.* at Counts V, VI, XI, XII.)

Hak Sa counterclaimed for contribution against Jeffrey, Giovanni, Elkins, and Jones. (Hak Sa's Countercl., Elkins' Resp. Ex. A, Dkt. No. 52-1.) Elkins and Jones followed Hak Sa's lead, each filing their own counterclaims for contribution against Jeffrey, Giovanni, Hak Sa, and each other. (Elkins' Countercl., Mot. to Dismiss Elkins' Countercl. Ex. B, Dkt. No. 35-2; Jones' Countercl., Mot. to Dismiss Jones' Countercl. Ex. B, Dkt. No. 33-2.) On October 4, 2019, the City removed the action to this Court. (Notice of Removal, Dkt. No. 1.) Jeffrey subsequently filed motions to dismiss Elkins' and Jones' Counterclaims under FED. R. CIV. P. 12(b)(6). (Mot. to Dismiss Elkins' Countercl., Dkt. No. 35; Mot. to Dismiss Jones' Countercl., Dkt. No. 33.) Giovanni then joined Jeffrey's Motions to Dismiss.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). The Court will accept all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). "If it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001) (citations omitted).

### III. DISCUSSION

#### A. *Monell* Claims Against the City of Chicago

In Counts II and VII, Plaintiffs allege the City violated their Fourteenth Amendment substantive due process rights to bodily integrity. Specifically, Plaintiffs allege the City violated their constitutional rights through *de facto* policies that allow officers to avoid investigation and punishment for criminal behavior and reinforce a "code of silence." (Third Am. Compl. at Counts I, VII ¶¶ 30-36.) Plaintiffs claim that these *de facto* policies encourage police officers, like Elkins, to feel "untouchable" and "above the law." (*Id.* at Counts I, VII ¶¶ 17, 20.) Plaintiffs allege that the City's *de facto* policies and practices were the "moving force" behind the deprivation of their constitutional rights. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1519-20 (7th Cir. 1990).

In moving to dismiss, the City contends that Elkins was not acting under the color of state law when he attacked the Plaintiffs, meaning the attack was an act of private violence. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989) ("nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"); *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) ("A state usually need not protect its citizens from 'private actors.'"). Basically, the City argues that it had no constitutional duty to protect Plaintiffs from Elkins, and thus, there was no underlying constitutional violation. The City also argues that the Third Amended Complaint contains insufficient facts to support a *Monell* claim based on a widespread custom theory.

To establish § 1983 liability against the City, a plaintiff must show that: "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ineco v. City of Chicago*, 286 F.3d 994, 998 (7th Cir. 2002). To successfully plead a widespread custom claim, a plaintiff must allege facts showing that at least more than one

instance of the alleged conduct occurred to establish that a custom in fact exists and that the allegedly unconstitutional behavior was not merely random. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). The plaintiff must show causation by alleging that the custom, policy, or practice is the "moving force" behind the alleged injury. *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 306 (7th Cir. 2010). Where municipal policies are the "moving force" behind the constitutional injury, the municipality itself is the state actor. *Gibson*, 910 F.2d at 1519; *Cazares v. Frugoli*, No. 13 C 5626, 2017 WL 1196978, at *14 (N.D. Ill. Mar. 31, 2017); *LaPorta v. City of Chicago*, 102 F. Supp. 3d 1014, 1022 (N.D. Ill. 2015); *Obrycka v. City of Chicago*, No. 07 C 2372, 2012 WL 601810, at *6 (N.D. Ill. Feb. 23, 2012).

Given the standard of review on a motion to dismiss, the Court finds that Plaintiffs sufficiently pleaded the three elements required to state a *Monell* claim against the City. First, Plaintiffs explicitly allege that they suffered the deprivation of their Fourteenth Amendment substantive due process right to bodily integrity. (Third Am. Compl., Counts I, VII ¶¶ 9, 38.) Second, Plaintiffs allege several *de facto* policies, practices and customs including: "concealing and/or suppressing officer misconduct," "investigating complaints against off duty officers differently than complaints against other citizens," "failing to enforce its

own rules," "failing to properly monitor and/or supervise its police officers," and enforcing a "code of silence." (*Id.* at Counts I, VII ¶¶ 30–35.) Plaintiffs also pleaded specific facts about several instances where these *de facto* policies, practices, and customs were applied to Elkins' misconduct to perpetuate an endemic culture in which officers, including Elkins, felt "above the law." (*Id.* at Counts I, VII ¶ 36.) These facts, among other things, related to the City's treatment of Elkins' sexual abuse charges, multiple arrests, convictions, and thirty-two registered complaints. (*Id.* at Counts I, VII ¶¶ 10–21.) Accepting these facts as true, the Court finds that Plaintiffs have plausibly alleged the first two elements.

Third, Plaintiffs allege that the City's *de facto* policies, practices, and customs "encouraged and/or motivated" Elkins to batter the Plaintiffs, causing their injuries. (*Id.* at Counts I, VII ¶¶ 36–37; *see also* Counts I, VII ¶ 22 ("Elkins felt that he was untouchable, and that the rule of law did not apply to him.").) Specifically, Plaintiffs allege the City knew that Elkins was a convicted felon who had been arrested multiple times, yet the City never terminated or disciplined Elkins beyond placing him on "desk duty." (*Id.* at Counts I, VII ¶¶ 10–21.) Plaintiffs further allege that the City was aware of at least thirty-two registered complaints against Elkins, including those regarding his use of

force, but the City continued to employ and protect Elkins. (*Id.* at Counts I, VII ¶ 18.)

The Third Amended Complaint also includes facts to explain the seven-month delay between the fight and Elkins' arrest. (*See id.* Counts I, VII ¶¶ 22–27.) During questioning after the fight, Jeffrey and Giovanni told police that Elkins was a "Chicago Police sergeant." (*Id.*) Plaintiffs further allege that despite Jeffrey and Giovanni identifying Elkins as the fight's instigator and an eyewitness selecting Elkins from a lineup, the City "continued to protect Elkins," and he was not arrested even when there was probable cause. (*Id.* at Counts I, VII ¶¶ 23–27.) On a motion to dismiss, the Court finds that Plaintiffs alleged sufficient facts to establish a connection between the City's policies and their constitutional injuries.

Because the Plaintiffs adequately pleaded the constitutional violation, municipal policy or practice, and causation necessary to state a claim under current Seventh Circuit law and *Monell*, the City's Motion to Dismiss is denied.

### B. Contribution Counterclaims

Giovanni and Jeffrey move to dismiss Elkins' and Jones' contribution claims due to a perceived lack of negligence allegations against Elkins and Jones for which they could feasibly seek contribution. (*See* Mot. to Dismiss Elkins' Countercl., Dkt.

No. 35; Mot. to Dismiss Jones' Countercl., Dkt. No. 33.) The Illinois Contribution Act provides that, "where 2 or more persons are subject to liability in tort arising out of the same injury to [the plaintiff], . . . there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 Ill. Comp. Stat. 100/2. Intentional tortfeasors have no right to contribution. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 542 (Ill. 1989). Therefore, the right to contribution arises from negligent acts by two or more tortfeasors. *See id.* "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012) (internal citations omitted).

First, Jeffrey and Giovanni argue that Elkins and Jones are not permitted to seek contribution for any intentional tort liability. *See Gerill*, 538 N.E.2d at 542. Elkins and Jones acknowledge this limitation and do not claim to seek contribution for any intentional tort liability. Next, Jeffrey and Giovanni argue that the lack of an explicit negligence count directed at Elkins and Jones in the Plaintiffs' Third Amended Complaint dooms their contribution counterclaims. In support, Jeffrey and Giovanni

portray Elkins' and Jones' counterclaims not as attempts to seek contribution as tortfeasors *vis-à-vis* the Plaintiffs, but rather as tortfeasors *vis-à-vis* another co-Defendant—Hak Sa. These arguments mischaracterize Elkins' and Jones' counterclaims and demonstrate a fundamental misunderstanding of Illinois law.

If negligent, Elkins and Jones seek contribution for any amount owed to the Plaintiffs from any co-Defendant *potentially* capable of also being held liable to the Plaintiffs for negligence. This claim is permissible under Illinois tort law:

> Under the statute, a right of contribution exists among codefendants even though judgment has not been entered against any or all of them. All that is required is that the persons seeking contribution and the persons from whom contribution is sought be *potentially* capable of being held liable to the plaintiff in a court of law or equity.

*Vroegh v. J & M Forklift*, 651 N.E.2d 121, 125 (Ill. 1995) (emphasis added) (citations omitted). Whether potential tort liability to the original Plaintiffs exists here is determined at the time of the injury out of which the right to contribution arises, not at the time the action for contribution is brought. *Id.* Further, "there is no requirement that the basis for contribution mirror the theory of recovery asserted in the original action." *J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.*, 516 N.E.2d 260, 267 (Ill. 1987).

Both the Plaintiffs' Third Amended Complaint and Hak Sa's Counterclaim contain allegations sufficient to establish the elements necessary for claims of negligence against Elkins and Jones. (*See* Third Am. Compl., Counts IV, X ¶¶ 9-11, Count VI ¶¶ 9-16, Count XII ¶¶ 2-9; Hak Sa's Countercl. ¶¶ 6-16.) Based on these allegations, it is entirely possible that a fact finder might absolve Elkins and Jones of intentional tort liability but still hold one or both parties liable for negligence as to the Plaintiffs. Thus, the potential for liability in tort remains, which "may be a proper predicate for a contribution claim." *People v. Brockman*, 574 N.E.2d 626, 634 (Ill. 1991). Because Elkins and Jones may be subject to liability for negligence, dismissal is inappropriate at this time.

## IV. CONCLUSION

For the reasons stated herein, the Motions to Dismiss (Dkt. Nos. 33, 35, 40) are denied.

**IT IS SO ORDERED.**

                                                                            Harry D. Leinenweber, Judge
                                                                            United States District Court

Dated: 2/18/2020