UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN SHERWOOD, et al | ) |
|     Plaintiffs, | ) Case No. 19-cv-06605 |
| | ) Judge Harry D. Leinenweber |
| v. | ) |
| | ) Magistrate Judge Cox |
| CITY OF CHICAGO, et al | ) |
|     Defendants. | ) |

**DEFENDANT CITY OF CHICAGO'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant City of Chicago by and through its Attorney, Celia Meza, Corporation Counsel for Defendant City of Chicago, and pursuant to Federal Rule of Civil Procedure 12(c), hereby moves this honorable Court for judgment on the pleadings as to Counts I and VII of Plaintiff's Third Amended Complaint. In support thereof, Defendant City of Chicago states as follows:

INTRODUCTION

On September 17, 2019, Plaintiffs filed their Third Amended Complaint in the Circuit Court of Cook County, Illinois. [ECF 1-1]. In their Third Amended Complaint, Plaintiffs allege that on September 29, 2018, Plaintiffs were at @tmosphere bar in Chicago, owned by Defendant Hak Sa, Inc., when they were battered by Defendants Jeffrey Rodriguez, Giovanni Rodriguez, off-duty Chicago Police Sergeant Eric Elkins, and off-duty Village of Oak Park Police Officer Dwayne Jones. [ECF 1-1]. On October 4, 2019, Defendant City of Chicago removed this action to the United States District Court, Northern District of Illinois. [ECF 1].

Plaintiffs' Third Amended Complaint contains twelve counts, including the following two counts against the City of Chicago: Count I – *Monell* claim by John Sherwood against the City of Chicago; Count VII - *Monell* claim by Tomasz Stacha against the City of Chicago. [ECF 1-1]. On

November 4, 2019, Defendant City moved to dismiss Counts I and VII of Plaintiffs' Third Amended Complaint. [ECF 40]. On February 18, 2020, this honorable Court denied Defendant City's motion. [ECF 71]. On March 3, 2020, Defendant City filed its Answer to the operative complaint. [ECF 72].

After the Court issued its order denying the City's motion to dismiss, the Seventh Circuit issued its decision in *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021). *LaPorta* makes clear that's Plaintiffs have no actionable claim against Defendant City. Defendant City now moves for judgment on the pleadings as to Plaintiffs' *Monell* claims against Defendant City of Chicago. Plaintiffs allege no facts that would support an inference that they suffered a violation of their Constitutional rights. Further, Defendant City of Chicago has no Constitutional duty to protect the public from private misconduct.

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). Such a motion must be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss, the court accepts as true all well-pleaded facts alleged by the plaintiff and all reasonable inferences to be drawn therefrom. *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). However, the court is not obligated to accept a complaint that simply raises the possibility of relief. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Rather, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, the court should not strain to find inferences that are not plainly apparent from the face of the complaint.

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." (*See* Fed. R. Civ. P. 8(a)(2)). A complaint satisfies this standard when its allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. Therefore, the complaint still needs to set forth enough factual specificity to causally connect Plaintiffs' claim to their alleged injury. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)

ARGUMENT

**Plaintiffs have not sufficiently alleged that Defendant City of Chicago violated their Constitutional rights, and Defendant City has no duty to protect Plaintiffs from private violence.**

Under *Monell*, a municipality cannot be held liable under § 1983 for the constitutional violations of its officers and agents on a theory of respondeat superior. *Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 690-91 (1978). Rather, the plaintiff must plead and later prove "that the constitutional violation was caused by a governmental 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *LaPorta*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Monell*, 436 U.S. at 694). Official custom and practice can take at least three forms: (1) an "express policy;" (2) "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice;" or (3) a constitutional violation "caused by a person with final policymaking authority." *Id.* (citing *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)).

Where the plaintiff "alleges that the municipality has not directly violated his rights but rather has caused an employee to do so, a 'rigorous standard of culpability . . . applies to ensure

that the municipality is not held liable solely for the actions of its employee.'" *LaPorta*, 988 F.3d at 986 (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398 (1997)). If "a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Brown*, 520 U.S. at 415.

The "first step in every § 1983 claim, **including a claim against a municipality** under *Monell*" . . . is "the requirement that the plaintiff must initially prove that he was deprived of a federal right. *LaPorta*, 988 F.3d at 987 (emphasis added). It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). The establishment of a deprivation of a federal right must come "*before* municipal fault, deliberate indifference, and causation come into play." *LaPorta*, 988 F.3d at 987 (emphasis in original).

The Fourteenth Amendment of the United States Constitution provides that: "No **State** shall . . . deprive any person of life, liberty, or property, without due process of law . . ." U.S. Const. amend. XIV (emphasis added). The Supreme Court has held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989). The purpose of due process is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Thus, due process "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* For that reason, "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide" such aid. *Id.* at 196-97.

The Court therefore held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. This reflects, among other things, that "the practicalities of day-to-day governance require officials to make difficult allocation choices and tradeoffs and that it is generally not for the courts to compel affirmative steps in one area at the expense of another in weighing competing policy options." *Schroder v. City of Fort Thomas,* 412 F.3d 724, 730 (6th Cir. 2005) (citing *DeShaney,* 489 U.S. at 203; *Collins v. City of Harker Heights,* 503 U.S. 115, 128-29 (1992)).

After *DeShaney*, there are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased the danger to a particular, foreseeable plaintiff rather than the general public. *E.g.*, *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). When neither *DeShaney* exception applies, local governments "have no constitutional duty to protect individuals from the actions of private citizens." *Latuszkin v. City of Chicago,* 250 F.3d 502, 505 (7th Cir. 2001).

On this basis, the Seventh Circuit repeatedly has declined to hold municipalities liable for private misconduct absent proof that a *DeShaney* exception applies, even in cases involving misconduct by police officers. In *Latuszkin,* for example, several off-duty police officers held a party in a police station parking lot involving "large amounts of alcohol"; while driving home afterward, an intoxicated officer struck and killed Latuszkin's wife. 250 F.3d at 503. Latuszkin then sued Defendant City of Chicago, claiming that it was liable under *Monell* because its policies "led [its] officers to believe that they were above the law" and therefore were "the foreseeable cause of Mrs. Latuszkin's death." *Id.* at 503-04. The Seventh Circuit rejected that claim because

governments "generally have no constitutional duty to protect individuals from the actions of private citizens," and the officer "was engaged in entirely private behavior at the time of the accident." *Id.* at 505-06.

In *Wilson-Trattner v. Campbell,* the Seventh Circuit considered a claim that sheriff's department officials were liable for emboldening a deputy to commit further acts of abuse, resulting in their employee injuring the plaintiff while acting outside the color of law. 863 F.3d 589 (7th Cir. 2017). The Court rejected the claim as "squarely foreclosed by *DeShaney*," explaining that even if the department officials' failure to intervene indirectly emboldened the deputy to mistreat her, that would not distinguish her case from *DeShaney*. *Id.* Under *DeShaney*, "[m]ere indifference or inaction in the face of private violence cannot support a substantive due process claim." *Id.* at 596. And absent "evidence of an underlying constitutional violation," the plaintiff's *Monell* claim for failure to train necessarily failed. *Id.*

*DeShaney* applies to **all constitutional claims involving private action**, including *Monell* claims:

> *Monell* and *DeShaney* are **not** competing frameworks for liability. The two cases concern fundamentally distinct subjects. *Monell* interpreted § 1983 and addressed the issue of who can be sued under the statute; the Court held that a municipality is a "person" under § 1983 and may be liable—just like an individual public official—for its own violations of federal rights. . . . **Monell did not address the substance of any right under the federal Constitution or laws**. It has nothing to say on that subject. It's a statutory-interpretation decision.
>
> *DeShaney*, on the other hand, addressed the substance of the constitutional right to due process. . . . . The Court interpreted the Due Process Clause and defined its scope, strictly limiting the circumstances under which a privately inflicted injury is cognizable as a due-process violation. [A plaintiff has] the burden to **prove a constitutional violation <u>in addition to</u> the requirements for municipal liability under Monell.**

*LaPorta*, 988 F.3d at 990–91 (emphasis added).

If a plaintiff was not deprived of his due process rights, a municipality "cannot be held liable for his injuries under § 1983—and that is so *even if* the requirements of *Monell* are established." *LaPorta*, 988 F.3d at 991 (emphasis in original). Under *DeShaney*, a municipality has no due-process duty to protect a plaintiff from an act of private violence. *Id.* at 992.

In *LaPorta*, Patrick Kelly, an off-duty Chicago Police Officer, was alleged to have shot his friend Michael LaPorta in the head during an argument at the end of a night of drinking together. *LaPorta*, 988 F.3d at 982. LaPorta subsequently sued the City of Chicago under 42 U.S.C. § 1983. *Id.* LaPorta alleged that the City's policy failures caused Kelly to shoot him *Id.* Specifically, LaPorta alleged that the City "fail[ed] to have an 'early warning system' to identify officers who were likely to engage in misconduct, [failed] to adequately investigate and discipline officers who engage in misconduct, and [perpetuated] a 'code of silence' that deters reporting of officers who engage in misconduct." *Id.* at 983. LaPorta alleged that these policies "produced a deep-rooted culture of tolerating and covering up officer misconduct, which led Kelly to believe that he could shoot LaPorta with impunity." *Id.* at 984.

Ultimately, the Seventh Circuit found that LaPorta did not suffer a violation of his Constitutional rights, and the City was not liable for failing to protect LaPorta from Kelly's act of private violence:

> LaPorta's claim fails at this first step. He did not suffer a deprivation of a right secured by the federal Constitution or laws. It's undisputed that Kelly was not acting under color of state law when he shot LaPorta. His actions were wholly unconnected to his duties as a Chicago police officer. He was off duty. He shot LaPorta after they spent a night out drinking together and had returned to his home to continue socializing at the end of the evening. Kelly's actions were those of a private citizen in the course of a purely private social interaction. **This was, in short, an act of private violence.**
>
> . . .

> Applying *DeShaney*, as we must, it's clear that the City is entitled to judgment as a matter of law. **It had no due-process duty to protect LaPorta from Kelly's act of private violence.** LaPorta has never argued that one of the DeShaney exceptions applies. Rightly so; he was not in state custody at the time of his injury, and no evidence supports the exception for state-created dangers. And because LaPorta was not deprived of his right to due process, **the City cannot be held liable for his injuries under § 1983—and that is so even if the requirements of *Monell* are established.** Simply put, LaPorta suffered a common-law injury, not a constitutional one.

*LaPorta*, 988 F.3d at 987, 991 (emphasis added).

In the present case, Plaintiffs have not plead allegations that would support an inference that Defendant City of Chicago violated their Constitutional rights. Importantly, Plaintiffs have **not** alleged that Defendant Elkins was on duty or acting under color of law. [ECF 1-1 ¶ 28]. Like the plaintiff in *LaPorta*, Plaintiffs in this case allege that the City of Chicago failed to adequately discipline police officers and maintained a "code of silence" which allowed Elkins to act with impunity. [ECF 1-1 ¶¶ 34-37]. Also like the plaintiff in *LaPorta*, Plaintiffs allege that the policies of Defendant City of Chicago violated their 14th amendment due process right of "bodily integrity." *Id.* ¶ 29. However, the 14th amendment only applies to **state** action, not the actions of private individuals.

*DeShaney* forecloses Plaintiffs claims against Defendant City of Chicago because Defendant City had no obligation to protect Plaintiffs from private violence. 489 U.S. 189, 195. Plaintiff has not alleged facts that would support an inference that either *Deshaney* exception should apply here. [ECF 1-1]. Because there was no violation of Plaintiffs' Constitutional rights, Defendant City cannot be held liable "*even if* the requirements of *Monell* are established." *LaPorta*, 988 F.3d at 991 (emphasis in original). The claims against the City should therefore be dismissed with prejudice.

WHEREFORE, for the foregoing reasons, Defendant City of Chicago respectfully requests that this Honorable Court grant it judgment on the pleadings with respect to Counts I and VII of Plaintiffs' Third Amended Complaint.

Dated: June 30, 2021

Respectfully Submitted,

By: */s/ Kyle A. Rockershousen*
Marion Moore, Chief Assistant Corporation Counsel
Kyle Rockershousen, Assistant Corporation Counsel
Andrea Campbell, Assistant Corporation Counsel
City of Chicago Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-0742
Kyle.Rockershousen@cityofchicago.org
Attorney No. 6321396

## CERTIFICATE OF SERVICE

I, Kyle A. Rockershousen, an attorney, hereby certify that on June 30, 2021, I provided service of the foregoing document, **Defendant City of Chicago's Rule 12(c) Motion for Judgment on the Pleadings**, to all attorneys of record via the Court's electronic filing system.

By: */s/ Kyle A. Rockershousen*
Assistant Corporation Counsel